# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| HILARY B. MILLER-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21 CV 272 MTS |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of self-represented plaintiff Hilary B. Miller-Bey, an inmate at South Central Correctional Center ("SCCC"), for leave to commence this civil action without payment of the required filing fee. Doc. [11]. Having reviewed the motion and the financial information submitted in support, the Court has determined that Plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $20.87. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will issue service on defendant Dr. John Williams in his individual capacity as to Plaintiff's deliberate indifference claim. The Court will dismiss Plaintiff's claims against the remaining Defendants in their individual capacities for failure to state a claim.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In support of the instant motion, Plaintiff submitted a copy of his Missouri Department of Corrections certified inmate account statement. Doc. [3]. A review of Plaintiff's account indicates an average monthly deposit of $104.33 and an average monthly balance of $25.40. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $20.87, which is 20 percent of Plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted.  An action is frivolous if it "lacks an arguable basis in either law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 328 (1989).  An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense.  *Id.* at 679.  The court must assume the veracity of well-pleaded

facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

On February 9, 2021, self-represented plaintiff Hilary B. Miller-Bey filed the instant action in the United States District Court for the Western District of Missouri. *See Miller-Bey v. MDOC, et al.*, 2:21-CV-04027-NKL (W.D. Mo.). The case was subsequently transferred to this Court pursuant to the federal venue statute, 28 U.S.C. § 1391(b), because most of the events giving rise to Plaintiff's claims occurred in the Eastern District of Missouri. Doc. [6].

Plaintiff's original complaint was drafted on a Western District of Missouri's form complaint for civil rights actions pursuant to 42 U.S.C. § 1983. Doc. [1]. Plaintiff named sixteen defendants, in their official and individual capacities, all of whom appeared to be employees of the Missouri Department of Corrections ("MDOC") or Corizon Health Services ("Corizon"). Attached

to the complaint was a thirty-eight page handwritten supplemental complaint consisting of 150 separately numbered paragraphs; thirty-seven pages of exhibits, including copies of grievances, grievance responses, and conduct violation reports; and an eight-page handwritten document, titled "Affidavit of Hilary B. Miller Bey in Support of Claim." Plaintiff's allegations involved a time-period spanning from 1990 to the present and involved incidents that took place at five separate correctional facilities. Plaintiff's primary complaints related to the medical treatment he received for Raynaud's Syndrome.

On April 26, 2021, the Court reviewed Plaintiff's complaint pursuant to 28 U.S.C. § 1915 and determined it was subject to dismissal for failure to comply with Federal Rule of Civil Procedure 8(a)'s requirement of a short and plain statement of the claim, and for improperly joining multiple claims against different defendants related to events arising out of different transactions or occurrences. Doc. [9]. The Court also informed Plaintiff that his claims against the SCCC, MDOC, and Department of Probation and Parole were legally frivolous because such entities could not be sued under § 1983, and any official capacity claims against individuals who worked for such entities were non-cognizable claims against their public employer.

Because Plaintiff was a self-represented litigant, the Court directed him to file an amended complaint to cure his pleading deficiencies. Plaintiff was provided with detailed instructions on how to properly submit his amended complaint.

### The Amended Complaint

On May 10, 2021, Plaintiff filed his amended complaint on a Court-provided 'Prisoner Civil Rights Complaint' form pursuant to 42 U.S.C. § 1983. Doc. [10].  Plaintiff names twelve defendants in their individual capacities only: (1) John Williams, Corizon Medical Director at

4

Missouri Eastern Correctional Center ("MECC"); (2) Dr. Thomas Bredeman, Corizon Associate Regional Medical Director; (3) Jennifer Sachse, Warden, MECC; (4) Jeri James, Medical Contractor Monitor, Corizon; (5) Julie Fipps, Registered Nurse, Corizon; (6) Jane Wheeler, Registered Nurse, Corizon; (7) Brock Van Loo, Warden, Tipton Correctional Center ("TCC"); (8) Cheryl Clad, Registered Nurse, Corizon; (9) Aaron Jarrett, Institutional Parole Officer, SCCC; (10) Sgt. Brown, Correctional Officer II, MECC; (11) Jane Doe, Nurse, MECC; and (12) Dawn Wade, Registered Nurse, MECC.

Plaintiff alleges that from 2015 to 2018 defendant Dr. Williams was deliberately indifferent to his serious medical needs. Plaintiff states Dr. Williams diagnosed him with Raynaud's Syndrome[1] on December 16, 2015 and recommended "insulated gloves, medical lay-ins for limited exposure to cold, [and an] extra blanket/pillow" for treatment. Doc. [10] at 7. Plaintiff alleges he went on a hunger strike in April of 2016 to protest "being punished for experiencing Raynaud's episodes." *Id.* Plaintiff does not explain what kind of punishment he was subjected to or who punished him.

After refusing thirty-one meals, Plaintiff alleges that Dr. Williams "intentionally misdiagnosed [him] and 2nd guessed his own medical opinion" regarding his Raynaud's Syndrome diagnosis, discontinued treatment, and denied him access to the chronic care clinic, which caused him "years of ongoing pain, agony, humiliation and emotional distress, and stress."

---

[1] "Raynaud's disease is a rare disorder of the blood vessels, usually in the fingers and toes. It causes the blood vessels to narrow when you are cold or feeling stressed. When this happens, blood can't get to the surface of the skin and the affected areas turn white and blue. When the blood flow returns, the skin turns red and throbs or tingles." MedlinePlus, United States National Library of Medicine and the National Institutes of Health, available at https://medlineplus.gov/raynaudsdisease.html (last accessed May 27, 2021).

*Id.* Plaintiff asserts Dr. Williams should not have doubted his original diagnosis and appears to allege that Dr. Williams's decision to suspend treatment was motivated by Plaintiff's hunger strike.

Plaintiff asserts he submitted grievances and letters complaining about his medical care to defendants Dr. Bredeman, Warden Sachse, Nurse Wheeler, Jeri James, and Nurse Wade, but they "fail[ed] to remedy the wrongs of Dr. Williams." Plaintiff alleges Dr. Bredeman inappropriately responded to his grievances by "rubber stamp[ing] the falsifications in [his] medical record" with a statement that "upon review of [his] medical record, grievance records and investigation" there was "no evidence to support a diagnosis of Raynaud's disease." *Id.* at 8. Plaintiff alleges Warden Sachse "had the power" to investigate his condition after receiving information of the alleged misdiagnosis but failed to do so. *Id.* Plaintiff alleges Nurse Wheeler failed to investigate his condition after receiving his grievances and challenges her response, in which she asserted that the medical devices he requested were not "deemed medically necessary." *Id.* at 10. Plaintiff alleges he wrote two letters to Ms. James to inform her he was being denied "medical devices (i.e. insulated gloves and coat)," which caused him to "self-medicate" and receive "sexual misconducts," but she "failed to respond responsibly." *Id.* at 8-9. Plaintiff asserts Nurse Wade received several of his informal resolution requests and "failed to help" by responding to him with incorrect information about his condition. *Id.* at 13. Plaintiff also appears to claim that these Defendants falsified his medical records, but he provides no facts in support of such an allegation.

On April 16, 2019, Plaintiff states he received a reply to a letter he wrote to the medical department, wherein, Nurse Fipps  stated, "we are having some pretty warm temperatures outside, so the need for your medical devices at this time may not be necessary." *Id.* at 9. Plaintiff argues her decision to deny him unspecified medical devices caused him emotional distress and pain.

Plaintiff further alleges Nurse Clad disregarded his serious medical needs when she failed to provide him with insulated boots and coat that he asked for in reasonable accommodation request, and only offered him "non-insulated Jersey gloves." *Id.* at 11.

Plaintiff asserts Warden Brock Van Loo was a "non-medical official," but was aware of the "necessity for his prescribed assistive devices (i.e. insulated coat and gloves)" due to his role as the "on-site ADA Coordinator." Plaintiff alleges Van Loo illegally confiscated the coat and gloves his wife sent him "from November 2018 to 5-9-19 during the coldest time of the year." *Id.* at 10.

Plaintiff alleges his parole officer Aaron Jarrett failed to investigate his medical condition and told him that if he continued his "current pattern of behavior" he would be "supervised as a sex offender" or " forced to serve even more time on [his] sentence." *Id.* at 11. Plaintiff states his release date was extended and defendant Jarrett failed to provide him with due process because he was not provided with a hearing, the right to call witnesses, or the ability to present evidence. The Court notes that attached to his original complaint was a form, titled "Relating to Release Consideration" from the Board of Probation and Parole. Doc. [1-1] at 24. The form indicates the Board reviewed his file and extended his "presumptive release date" due to "poor institutional judgment." *Id.* Also attached to his original complaint was a letter defendant Jarret wrote to Plaintiff in response to his request to appeal the extended release date. *Id.* at 25. Within the letter, defendant Jarrett explained the Parole Board's decision was not subject to appeal and based on the fact that he "received six violations in the last year, four of which [were for] Inappropriate Sexual Behavior." *Id.*

On November 13, 2019, Plaintiff alleges he was "written up for a #15 sexual misconduct for experiencing Raynaud's episodes" and "later written up again for a 10.4 and 35.1 malingering." Doc. [10] at 12. Plaintiff states he informed correctional officer Sgt. Brown that he suffered from Raynaud's Syndrome, but Sgt. Brown "disregarded such information" and placed him "into an even colder strip cell . . . completely nude." *Id.* Plaintiff states he "blacked out" and had to "plead[] for hours to receive clothes, but only got a partial piece of a state blanket." *Id.* Plaintiff alleges defendant Nurse Jane Doe incorrectly told Sgt. Brown that "it was alright" for him "to be placed in the strip cell" and appropriate for him to be written up for "malingering." *Id.*

For relief, Plaintiff seeks a declaration that his constitutional rights were violated, a dismissal of his institutional conduct violations, receipt of medical devices, compensatory damages in the amount of $7,000,000, and punitive damages in the amount of $500,000. Plaintiff also seeks this Court to direct the Missouri Board of Probation and Parole to not extend his release date or require him to register as a sex offender.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983. For the reasons discussed below, the Court will Court will direct the Clerk of Court to issue process on defendant Dr. John Williams in his individual capacity and will dismiss the claims against the remaining defendants for failure to state a claim.

### A. Defendant Dr. John Williams

Plaintiff alleges Dr. Williams was deliberately indifferent to his serious medical needs. Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle*, 429 U.S. at 103. To demonstrate constitutionally

inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a Plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions as it is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, 1997 WL 160322, at *2 (6th Cir. 1997) (unpublished opinion).

Here, Plaintiff alleges Dr. Williams diagnosed him with Raynaud's Syndrome in December of 2016 and recommended treatment, which included insulated gloves, a medical lay-in for limited

exposure to cold, and an extra blanket and pillow. Plaintiff alleges that in April of 2016, while he was on a hunger strike to protest "being punished for experiencing Raynaud's Episodes," Dr. Williams "intentionally" determined his original diagnosis was incorrect and discontinued treatment. Plaintiff alleges Dr. Williams was deliberately indifferent to his serious medical needs as a result of reviewing his initial diagnosis and determining Plaintiff did not have Raynaud's Syndrome.

While Plaintiff's allegation that Dr. Williams inappropriately second-guessed his Raynaud's Syndrome diagnosis and suspended treatment can be construed as an allegation of malpractice or mere disagreement with a medical provider, which does not amount to an Eighth Amendment violation, the Court finds at this early stage that Plaintiff has sufficiently alleged an Eighth Amendment claim of deliberate indifference against Dr. Williams. The Court assumes for the purposes of initial review that Raynaud's Syndrome is an objectively serious medical condition. Plaintiff plausibly alleges that Dr. William's suspension of medical care for Raynaud's Syndrome was intentional and in retaliation for Plaintiff's self-imposed hunger strike. "'Whether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question'" that may require investigation by expert witnesses. *Ledford v. Sullivan*, 105 F.3d 354, 360 (7th Cir. 1997) (quoting *Greason v. Kemp*, 891 F.2d 829, 835 (11th Cir. 1990)).

For purposes of preservice review, the Court must accept as true all of Plaintiff's factual allegations and afford him "all reasonable inferences that can be drawn from those allegations." *See Jackson v. Nixon*, 747 F.3d 537, 540-41 (8th Cir. 2014); *Dadd v. Anoka Cty.*, 827 F.3d 749, 754 (8th Cir. 2016). With that in mind, Plaintiff's deliberate indifference allegation against defendant Dr. Williams is sufficient for purposes of § 1915 review. Accordingly, the Clerk of

Court will be directed to serve process upon defendant Dr. Williams in his individual capacity as to Plaintiff's claim of deliberate indifference.

### B. Defendants Dr. Thomas Bredeman, Warden Jennifer Sachse, Jane Wheeler, Dawn Wade, and Jeri James

Plaintiff's allegations against defendants Dr. Bredeman, Warden Sachse, Nurse Wheeler, Nurse Wade, and Ms. James for failure to respond favorably to his grievances, informal resolution requests, or letters related the treatment of his Raynaud's Syndrome do not state a claim of a constitutional violation. To state a cognizable claim under § 1983, a Plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Hamilton v. Schriro*, 74 F.3d 1545, 1549 (8th Cir. 1996). "There is no federal constitutional right to a prison grievance procedure, and neither a state law nor a state policy creates one." *Poe v. Corizon Health*, 2019 WL 186660, at *4 (E.D. Mo. Jan. 14, 2019). Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (the grievance procedure is a procedural right only and confers no substantive right on an inmate). Thus, Plaintiff's allegations that these defendants violated his constitutional rights by denying his grievance requests for additional medical treatment or providing him with responses he disagreed with is not cognizable.

Additionally, Plaintiff's allegations against defendants Dr. Bredeman, Warden Sachse, Nurse Wheeler, Nurse Wade, and Ms. James for failure to investigate his inadequate medical care complaints after receipt of his grievances also fails. A complaint examiner runs the risk of being liable for deliberate indifference if he or she fails to do his or her appointed tasks by, for example, "routinely sen[ding] each grievance to the shredder without reading it" or "intervene[ing] to

prevent the medical unit from delivering needed care might be thought liable." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (citations omitted). But "[r]uling against a prisoner on an administrative complaint does *not* cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (emphasis added).

Plaintiff, here, does not allege that the defendants failed to perform their appointed tasks of reviewing his grievances. The Plaintiff simply disagrees with their review of the medical record and subsequent responses. Such allegations are not enough to support a deliberate indifference claim against them even if the Plaintiff eventually proves that the medical staff was indifferent. "[A complaint examiner's] failure to realize the potential gravity of the situation does not amount to deliberate indifference." *Greeno v. Daley*, 414 F.3d 645, 657 (7th Cir. 2005).

Plaintiff's allegations also do not state a viable claim for relief against these defendants because he does not allege that they were directly involved in or personally responsible for any incidents that allegedly deprived him of his constitutional rights. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the Plaintiff of his constitutional rights); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983).

Here, Plaintiff makes the following allegations: (1) Dr. Bredeman "rubber stamped" his grievance response; (2) Warden Sachse and Nurse Wheeler failed to investigate his condition after receipt of Plaintiff's grievances; (3) Nurse Wade provided incorrect information about his condition in a response to one of Plaintiff's grievances; and (4) Ms. James "failed to respond responsibly" to two of his letters complaining he was denied medical devices. Plaintiff does not allege that any of these defendants functioned as a treating provider and he fails to state what specific role, other than declining to grant his grievance requests, they took in depriving him of medical treatment. As stated above, responding unfavorable to an inmate's grievance is not a constitutional violation.

To any extent Plaintiff is alleging that these defendants are liable solely because they held administrative or supervisory positions, *i.e.*, because Jennifer Sachse is the Warden of MECC, Dr. Bredeman is the Associate Regional Medical Director for Corizon, or Jeri James is Corizon's Medical Contractor Monitor, such claims must also be dismissed. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 cases). A supervisor is liable for the actions of his subordinates under § 1983 only if he personally participates in the alleged unconstitutional conduct, or when there is a causal connection between his actions and the alleged constitutional deprivation. *See Glick v. Sargent*, 696 F.2d 413, 415 (8th Cir. 1983) (warden must play a personal role in the disciplinary process; he cannot be held liable for the outcome of the process); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of a prison is insufficient to establish personal involvement required to support liability under § 1983) As stated above, Plaintiff has failed to plead specific facts

13

establishing an actual link or connection between the named defendants and the alleged constitutional violations.

Lastly, as to Plaintiff's allegation that these defendants "falsified [his] medical record," such a claim also fails because it is vague and conclusory. Plaintiff does not allege that defendants Dr. Bredeman, Warden Sachse, Nurse Wheeler, Nurse Wade, or Ms. James were personally involved in Plaintiff's medical treatment and, therefore, in a position to falsify or alter Plaintiff's treatment notes. Nor does Plaintiff identify the specific documents they purportedly falsified. Plaintiff's mere allegation that these defendants falsified medical records is insufficient to state a cognizable constitutional claim. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (concluding that claims based on the falsity of charges and impropriety of the defendant's involvement in the grievance procedure, "standing alone, do not state constitutional claims"). The Court is not required to accept such conclusions as true. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). Plaintiff's allegations related to the falsification of his medical records are nothing more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements" that the Supreme Court has found deficient. *Iqbal*, 556 U.S. at 678.

Thus, liberally construing the complaint, Plaintiff's allegations against Dr. Bredeman, Warden Sachse, Nurse Wheeler, Nurse Wade, and Ms. James in their individual capacities will be dismissed pursuant to § 1915(e)(2)(B) for failure to state a claim.

**C. Defendants Julie Fipps and Cheryl Clad**

14

Plaintiff alleges that on April 19, 2016 defendant Nurse Fipps wrote to him in response to a letter he sent the medical department. Plaintiff states she denied him unidentified "medical devices" due to "pretty warm temperatures outside." Doc. [10] at 9. Plaintiff further alleges Nurse Clad disregarded his serious medical needs on an unidentified date when she failed to provide him with the insulated boots and coat that he requested via a reasonable accommodation form, and only offered him "non-insulated Jersey gloves." *Id.*

Plaintiff's claim that Nurses Fipps and Clad failed to provide him with specific medical devices do not state a constitutional violation. His allegations merely establish that he disagrees with the course of medical treatment he was provided, or, at most, that they committed medical malpractice or negligence. "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation," *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008), and medical malpractice does not amount to a claim of constitutional dimension "merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Allegations establishing Plaintiff's disagreement with treatment decisions do not state claims of constitutional significance. *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017); *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "While inmates have a right to adequate medical care, they have no "right to receive a particular or requested course of treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Treating providers are free to exercise their independent medical judgment and a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (alteration in original) (citation omitted).

15

Consequently, Plaintiff's allegations that he was not provided with an unidentified medical device during warmer temperatures, or insulated boots and a coat on an unspecified date, indicate a disagreement over a treatment method, or at best, negligence in treating his condition.

Thus, liberally construing the complaint, Plaintiff's allegations against defendants Fipps and Clad in their individual capacities will be dismissed pursuant to § 1915(e)(2)(B) for failure to state a claim.

**D. Defendant Warden Brock Van Loon**

Plaintiff asserts Warden Van Loo was a "non-medical official," but was aware of the "necessity for his prescribed assistive devices (i.e. insulated coat and gloves)" due to his role as the "on-site ADA Coordinator." Plaintiff asserts Van Loo "illegally confiscated" a coat and pair of gloves his wife sent him from "November 2018 to 5-9-19." Doc. [10] at 10.

Plaintiff's allegation that Warden Van Loon interfered with his treatment of Raynaud's Syndrome by confiscating his coat and jacket fails to state a constitutional violation for two reasons. First, Plaintiff alleges the coat and jacket was provided to him by his wife, not a medical provider. Second, Plaintiff alleges these items were confiscated in November of 2018, approximately two years after he alleges his treating physician determined he did not have Raynaud's Syndrome and suspended his access to medical devices, such as insulated coats and gloves. Whether Dr. Williams was wrong in his decision to revoke treatment, it would not have been defendant Van Loon's responsibility, either as a Warden or a ADA Coordinator, to second guess the medical judgment of a treating provider. Non-medical care providers have no authority to investigate or overrule diagnostic and treatment decisions made by medical

16

professionals. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995); and *Crooks v. Nix*, 872 F.2d 800, 803 (8th Cir. 1989).

Thus, liberally construing the complaint, Plaintiff's allegations against defendant Warden Van Loo in his individual capacity will be dismissed pursuant to § 1915(e)(2)(B) for failure to state a claim.

### E. Defendant Aaron Jarrett

Plaintiff alleges parole officer Jarrett failed to investigate his medical condition and told him that if he continued his "current pattern of behavior" he would "be supervised as a sex offender or [he] [would] be forced to serve even more time on [his] sentence." Plaintiff states his release date was extended due to "poor institution adjustment." Doc. [10] at 11. Plaintiff alleges defendant Jarrett denied him due process because his sentence was extended without a hearing.

As to Plaintiff's allegation that his parole officer was responsible for investigating his medical care at his request, such a claim fails. Defendant Jarrett is not a medical care provider and, as a result, has no authority or obligation to investigate treatment decisions made by medical professionals. *See Camberos*, 73 F.3d at 176; and *Crooks*, 872 F.2d at 803. A parole officer has no obligation to ensure an inmate or parolee receives medical care, instead, he or she is only constitutionally obligated not to block treatment. *See Mitchell v. Kallas*, 895 F.3d 492, 502 (7th Cir. 2018). Here, Plaintiff's claim against Jarrett is limited to his failure to investigate his medical condition, and not that he prevented any prescribed treatment.

Plaintiff's procedural due process claim against defendant Jarrett also fails. Plaintiff alleges his release date was extended by the Board of Probation and Parole without a hearing due to "poor institution adjustment." Attached to his original complaint was a form, titled "Relating to Release

17

Consideration" from the Board of Probation and Parole. Doc. [1-1] at 24. The form indicates the Board reviewed his file and extended his "presumptive release date" as a result of "poor institutional judgment" for receiving six violations, including four for inappropriate sexual behavior. *Id.* at 25. The Supreme Court has stated that a convicted person has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). In other words, an inmate does not have a protected, federal due process right to parole. *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016). Moreover, Missouri's "parole statutes create no liberty interest under state law in the parole board's discretionary decisions." *Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005). Plaintiff's allegation cannot support a due process claim against his parole officer, or the Parole Board, because he fails to identify a protectable liberty interest. Therefore, the facts set forth against defendant Jarrett do not support a cause of action under § 1983.

Thus, liberally construing the complaint, Plaintiff's allegations against defendant Jarrett in his individual capacity will be dismissed pursuant to § 1915(e)(2)(B) for failure to state a claim.

### F. Defendants Sgt. Brown and Nurse Jane Doe

Plaintiff alleges that on November 13, 2019 he was "written up for a #15 sexual misconduct for experiencing Raynaud's episodes" and "later written up again for a 10.4 and 35.1 malingering." Doc. [10] at 12. Plaintiff states he informed Sgt. Brown that he suffered from Raynaud's Syndrome, but he "disregarded such information" and placed him "into an even colder strip cell . . . completely nude." *Id.* Plaintiff states he "blacked out" and had to "plead[] for hours to receive clothes, but only got a partial piece of a state blanket." *Id.* Plaintiff does not state how long he was confined in the strip cell but does admit he received medical treatment from a nurse when he fell

unconscious. Plaintiff also states Sgt. Brown "falsified [a] government document because he intentionally left out the conduct violation report[.]" *Id.* Plaintiff does not explain what kind of document was falsified. Plaintiff further alleges defendant Nurse Jane Doe incorrectly told defendant Brown that "it was alright" for him "to be placed in the strip cell" and appropriate for him to be written up for "malingering." *Id.*

The Eighth Amendment proscribes punishment that involves the "unnecessary and wanton infliction of pain" that is "grossly out of proportion to the severity of the crime." *Gregg v. Georgia*, 428 U.S. 153 (1976). In determining whether inmates' conditions of confinement violate the Eighth Amendment, the Court looks at the "totality of the circumstances" that make up those conditions. *See Rhodes v. Chapman*, 452 U.S. 337, 363 (1981); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), on appeal after remand, *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985). Further, the Court must apply the "deliberate indifference" standard. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Officials are deliberately indifferent if they "know of and disregard an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To be held liable, officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and [they] must also draw the inference." *Id.* Failure to perceive a significant risk and thus to eliminate it does not constitute the infliction of punishment. *Id.* Moreover, prison officials who respond reasonably to a known risk may not be held liable under the Eighth Amendment, even if their response failed to prevent injury. *Id.* at 844.

Conditions are not cruel and unusual merely because they are harsh or uncomfortable. To be cruel and unusual, the Plaintiff must be deprived of one or more of the basic necessities of life.

19

*Brown v. Nix*, 33 F.3d 951 (8th Cir.1994). "[T]here is no absolute Eighth Amendment right not to be put in a cell without clothes or bedding." *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995) (placement in a strip cell without clothes, water, mattress, pillow, sheets or blanket for four days was found not unconstitutional). To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is subjective and requires that the inmate prove that the prison officials had a "sufficiently culpable state of mind." *Id.*

Plaintiff's claim against Sgt. Brown for placing him in a strip cell nude after being written up for two violations does not state a claim under the Eighth Amendment because Plaintiff has not alleged that he was subjected to a serious harm. Plaintiff does not state how long he was in the strip cell and admits that after he "blacked out" he received medical treatment from a nurse. Plaintiff does not allege that he suffered from specific symptoms triggered by his Raynaud's Syndrome as a direct result from being confined in the strip cell. Moreover, Plaintiff states that Nurse Jane Doe, a medical provider, told Sgt. Brown that "it was alright to be placed in the strip cell." Sgt. Brown cannot be said to have deliberately disregarded a substantial risk to Plaintiff's health or safety when Plaintiff admits a nurse approved of the placement.

Plaintiff's claim that Sgt. Brown "falsified [a] government document also fails. Plaintiff does not identify the specific document he purportedly falsified. Plaintiff's mere allegation that he falsified a record is insufficient to state a cognizable constitutional claim. The Court is not required to accept such conclusions as true. *See Torti*, 868 F.3d at 671 ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to

raise a right to relief above the speculative level"). Plaintiff's allegations related to the falsification of a government document are nothing more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements" that the Supreme Court has found deficient. *Iqbal*, 556 U.S. at 678.

Lastly, Plaintiff fails to state a claim against Nurse Jane Doe for deliberate indifference. Plaintiff alleges she incorrectly told Sgt. Brown that he could be placed in a strip cell and write him up for malingering. However, this incident occurred in 2019, years after his treating physician determined he did not have Raynaud's Syndrome and suspended his access to medical devices, such as insulated coats and gloves. Moreover, Plaintiff does not allege that he suffered from specific symptoms triggered by his Raynaud's Syndrome as a direct result from being confined in the strip cell. Therefore, it was not a constitutional violation for Nurse Jane Doe to defer to Plaintiff's treating provider.

Thus, liberally construing the complaint, Plaintiff's allegations against defendants Sgt. Brown and Nurse Jane Doe in their individual capacities will be dismissed pursuant to § 1915(e)(2)(B) for failure to state a claim.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed *in forma pauperis* Doc. [11] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall pay an initial filing fee of $20.87 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue summons on the complaint as to defendant Dr. John Williams, in his individual capacity, as to Plaintiff's deliberate indifference claim, at the following address: Missouri Eastern Correctional Center, 18701 U.S. Highway 66, Pacific, Missouri 63069.

**IT IS FURTHER ORDERED** that because Plaintiff is proceeding *in forma pauperis* in this action, service shall be effectuated by the United States Marshal's Office through summons, pursuant to Fed. R. Civ. P. 4.  *See* 28 U.S.C. §1915.

**IT IS FURTHER ORDERED** that a copy of the summons and return of summons shall be filed in this matter.

**IT IS FURTHER ORDERED** that Plaintiff's claim brought against defendants Dr. Thomas Bredeman, Jennifer Sachse, Jeri James, Julie Fipps, Jane Wheeler, Brock Van Loo, Cheryl Clad, Aaron Jarrett, Sgt. Brown, Jane Doe, and Dawn Wade are **DISMISSED** without prejudice for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that, on the Court's own motion, the Clerk of the Court shall amend the short caption to "Miller-Bey v. Williams."

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 14th day of June, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE