UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HILARY B. MILLER-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-cv-272-MTS |
| | ) | |
| JOHN WILLIAMS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendant John Williams's Motion for Summary Judgment, Doc. [62], pursuant to Federal Rule of Civil Procedure 56, on Plaintiff's Second Amended Complaint, Doc. [24], for violating Plaintiff's Eighth Amendment rights pursuant to 42 U.S.C. § 1983. Hilary B. Miller-Bey, a *pro se* litigant, brought this action against Defendant Dr. John Williams ("Defendant"), the Corizon Medical Director at Missouri Eastern Correctional Center ("MECC"), related to the treatment Plaintiff received for Raynaud's syndrome.[1] Plaintiff claims Defendant acted deliberately indifferent to Plaintiff's serious medical needs while incarcerated at MECC from 2015 to 2018. For reasons discussed below, the Court grants Defendant's motion.

\* \* \* \* \* \* \* \*

Before addressing the substantive issues raised in this Motion, the Court notes Plaintiff's failure to litigate. Despite giving Plaintiff multiple opportunities (and months) to respond to Defendant's Motion, *see* Docs. [71] & [74], Plaintiff has not filed any response and failed to controvert Defendant's Statement of Material Facts, as required by the Federal Rules of Civil

---

[1] "Raynaud's [] causes some area of a person's body, such as fingers or toes, to feel numb and cold in response to cold temperatures or stress. [] With Raynaud's, smaller arteries that supply blood to the skin narrow, limiting blood circulation to affected areas. Treatment of Raynaud's depends on its severity and whether other underlying health conditions are present." Doc. [64] ¶ 3.

1

Procedure and the Local Rules of this District. Fed. R. Civ. P. 56(c)(1); L.R. 4.01(E). Accordingly, as both the Federal and Local Rules provide, the Court deems Defendant's facts as admitted. Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); L.R. 4.01(E) (stating "[a]ll matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party"); *see also* Doc. [74] (warning Plaintiff he "shall file his Responses to Defendants' Motions for Summary Judgment no later than March 28, 2023" and "[f]ailure to file Responses will result in all matters set forth in the Defendants' Statements of Uncontroverted Material Facts being deemed admitted for purposes of summary judgment").

The Court also notes it previously granted Defendant's request to deem as admitted Defendant's Requests For Admission, Doc. [72], because Plaintiff, again, failed to respond, despite the Court giving Plaintiff several chances to, *see, e.g.*, Doc. [58]. Thus, the Court will set out the undisputed and relevant factual background as supplied by Defendant in his Motion for Summary Judgment and Statement of Material Facts.

**I.     BACKGROUND**

This action concerns Plaintiff's medical treatment at MECC by Defendant, a licensed medical doctor. Doc. [64] ¶ 2. During Plaintiff's incarceration at MECC, Defendant attempted to determine whether Plaintiff had Raynaud's syndrome at all and, if so, whether it was primary (Raynaud's disease) or secondary (Raynaud's phenomenon). *Id.* ¶ 5. "The workup of Raynaud's can be protracted and requires many evaluations and tests. A period of observation is also necessary to make the diagnosis and proceed to the next step." *Id.* ¶ 41.

2

Defendant initially believed Plaintiff had secondary Raynaud's (i.e.: Raynaud's phenomenon), which is caused by an underlying condition. *Id.* ¶ 41. Defendant "performed numerous physical examinations and ordered several labs in attempt to diagnose his underlying condition which he hoped could be treated and end his Raynaud's symptoms." *Id.* ¶¶ 41, 49. Defendant ultimately diagnosed Plaintiff with "Raynaud's phenomenon" and ordered a "lay-in for an extra blanket and pillow," "thermal insulated gloves," and "limited cold exposure." *Id.* ¶ 16.

Several months later, Michel Somers, a correctional officer at MECC, observed Plaintiff tying ligatures around his arm. *Id.* ¶¶ 20–22. "Plaintiff used his laundry bag string or some other device to cut off the circulation to his left arm/hand or other extremities." *Id.* ¶ 44. "The discovery of Plaintiff tying ligatures around his arm to fake symptoms of Raynaud's caused Dr. Williams to doubt his initial diagnosis, as Plaintiff may have been attempting to manipulate security and medical for secondary gain." *Id.* ¶ 41. Based on this new information, Defendant changed his diagnoses to "doubt Raynaud's" and discontinued Plaintiff's lay-ins in response to custody reports that Plaintiff was observed with a ligature around his arm cutting off the circulation. *Id.* ¶¶ 48, 41, 25, 43. "At no time did Dr. Williams discontinue Plaintiff's lay-ins or deny him medical care due to him declaring a hunger strike." *Id.* ¶ 43. Defendant discontinued Plaintiff's lay-ins because he doubted the diagnoses due to Plaintiff faking symptoms by tying ligatures around his arms. *Id.* ¶¶ 48, 41, 25, 43.

After Defendant undiagnosed Plaintiff's Raynaud's, "Plaintiff continued to report symptoms which were documented by nursing, [and] Dr. Williams continued the previous treatment plan to diagnose an underlying condition that could be causing Raynaud's phenomenon while also making sure that any flare-ups were recorded by nursing as part of the observation process to evaluate for primary Raynaud's." *Id.* ¶ 42. "This was even though when Dr. Williams

3

examined Plaintiff, his hands, fingers, and feet almost always appeared normal." *Id.* "Ultimately, Plaintiff transferred out of [MECC] before Dr. Williams could make a definitive diagnosis." *Id.* ¶¶ 42, 5.

Plaintiff filed the instant action alleging Defendant's treatment and diagnosis of Raynaud's constituted a deliberate indifference to Plaintiff's serious medical needs. Doc. [24] at 3–6, 12–20. Defendant now moves for summary judgment on the claim against him. Doc. [62].

## II.  LEGAL STANDARD

Because Plaintiff is proceeding *pro se*, the Court is bound to liberally construe his filings in order to do substantial justice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Native Am. Council of Tribes v. Solem*, 691 F.2d 382, 384 (8th Cir. 1982). However, a litigant's *pro se* status does not excuse him from compliance with the Federal Rules of Civil Procedure or the Local Rules of this District. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("Although *pro se* pleadings are to be construed liberally, *pro se* litigants are not excused from failing to comply with substantive and procedural law.").

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). "Even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim." *Giles v. Saint Luke's Northland-Smithville*, 908 F.3d 365, 369 (8th Cir. 2018) (quoting *Interstate Power Co. v. Kan. City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993)). Thus, when the nonmoving party fails to address another party's assertion of fact, the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting

4

materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3). The district court is under no obligation "to plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996) (rejecting argument by non-moving party that even though she failed to respond to the motion for summary judgment, "that her pleadings and deposition testimony contained facts sufficient to raise genuine issues of material fact"). Nor is it required to "wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990)); *see also Johnson Tr. of Operating Engineers Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 524 (8th Cir. 2020) ("Even if there is some relevant information in the record, this court 'will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.'" (quoting *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006))).

**III.   DISCUSSION**

Plaintiff alleges Defendant was deliberately indifferent to his serious medical needs while incarcerated at MECC from 2015 to 2018. Based on the undisputed facts of record, the Court concludes Defendant did not act deliberately indifferent to Plaintiff's medical needs.

Under the Eighth Amendment, the government has an obligation to provide medical care to those it incarcerates. *Estelle*, 429 U.S. at 103. A state violates this right "when it is deliberately indifferent to a prisoner's serious medical needs." *De Rossitte v. Correct Care Sols., LLC.*, 22 F.4th 796, 802 (8th Cir. 2022). To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, the inmate must show (1) he suffered "objectively serious medical needs" and (2) that the "prison officials actually knew of but deliberately disregarded

5

those needs." *Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019) (quoting *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006)).

"Proof of deliberate indifference requires a showing of a mental state 'akin to criminal recklessness.'" *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019) (quoting *A.H. v. St. Louis Cty.*, 891 F.3d 721, 726 (8th Cir. 2018)). Mere negligence, or even gross negligence, in diagnosing or treating a medical condition does not rise to the level of an Eighth Amendment violation. *Hamner*, 937 F.3d at 1177 (citing *Estelle*, 429 U.S. at 106). Instead, to prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). Culpable actions include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997); *Hamner*, 937 F.3d at 1177 ("Prison officials may not deliberately delay or deny prisoners' medical care").

Here, the undisputed facts do not establish Defendant acted with deliberate indifference to the diagnosis or treatment of Plaintiff's Raynaud's. Defendant initially believed Plaintiff had Raynaud's phenomenon (secondary Raynaud's) and performed numerous physical examinations and ordered several labs to diagnose Plaintiff's underlying condition. After diagnosing Plaintiff with secondary Raynaud's, Defendant ordered lay-ins for an extra blanket and pillow, insulated gloves, and limited cold exposure. It was not until Defendant learned Plaintiff had used ligatures around his arm that Defendant doubted his diagnosis and discontinued the lay-ins.[2] Even after Defendant undiagnosed Plaintiff, Defendant "continued the previous treatment plan to diagnose" and evaluate Plaintiff for primary and secondary Raynaud's. Doc. [64] ¶ 42.

---

[2] Unlike Plaintiff's allegations, the undisputed facts show Defendant did not discontinue Plaintiff's lay-ins or deny Plaintiff medical care due to him declaring a hunger strike.

6

Unlike Plaintiff's allegations,[3] Defendant did not intentionally "delay or deny" Plaintiff medical care. *Hamner*, 937 F.3d at 1177.  Instead, the undisputed facts show Defendant doubted Plaintiff even had Raynaud's upon learning of Plaintiff's ligature stunts and discontinued the lay-ins on that basis.  *See* Doc. [64] ¶¶ 48, 41, 25, 43.  "[D]isagreement with [a] diagnosis, *or lack thereof*, does not establish a deliberate indifference claim." *De Rossitte*, 22 F.4th at 803 (emphasis added).  Similarly, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008); *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118–19 (8th Cir. 2007) (explaining a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation" (quoting *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992))); *see also Dulany*, 132 F.3d at 1239 ("prison doctors remain free to exercise their independent medical judgment").  As the Court previously stated in this case, "Plaintiff's allegations that he was not provided with . . . insulated boots and a coat . . . indicate a disagreement over a treatment method, or at best, negligence in treating his condition." *Miller-Bey v. Mo. Dep't of Corr.*, 4:21-cv-272-MTS, 2021 WL 2413366, at *8 (E.D. Mo. June 14, 2021).  Moreover, to the extent Plaintiff alleges Defendant misdiagnosed his condition (primary v secondary Raynaud's), such a claim sounds in negligence or medical malpractice and is insufficient to show deliberate indifference.[4]  *See Dulany*, 132 F.3d at 1239.

---

[3] The Court previously denied Defendant's motion to dismiss on this basis because Plaintiff "plausibly alleged" that Defendant's "suspension of medical care for Raynaud's Syndrome was intentional and in retaliation for Plaintiff's self-imposed hunger strike." *Miller-Bey v. Mo. Dep't of Corr.*, 4:21-cv-272-MTS, 2021 WL 2413366, at *5 (E.D. Mo. June 14, 2021).  Now, viewing the facts of record, Plaintiff's allegation is plainly contradicted. *See* Doc. [64] ¶¶ 48, 41, 25, 43.

[4] In a previous Memorandum and Order, the Court explained that any allegations by Plaintiff that Defendant "inappropriately second-guessed his Raynaud's Syndrome diagnosis and suspended treatment" is "construed as an allegation of malpractice or mere disagreement with a medical provider, which does not amount to an Eighth Amendment violation." *Miller-Bey*, 2021 WL 2413366, at *5.

7

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant John Williams's Motion for Summary Judgment, Doc. [62], is **GRANTED**.

Dated this 19th day of April, 2023.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE